**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | |
|---|---|
| In re:<br><br>**AMR ELRAHIMY,**<br><br>    **Debtor.** | **Case No. 23-11097-LSS**<br>**Chapter 7** |
| **GERARD R. VETTER**<br>**ACTING UNITED STATES TRUSTEE**<br>**for REGION 4,**<br>**6305 Ivy Lane, Suite 600**<br>**Greenbelt, Maryland 20770**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**AMR ELRAHIMY**<br>**25367 Lynwood Farm Court**<br>**Clarksburg, Maryland 20871**<br><br>    **Defendant.** | **Adversary No.:** |

## COMPLAINT TO DENY DISCHARGE OF DEBTOR

  Gerard R. Vetter, Acting United States Trustee for Region Four ("United States Trustee"), pursuant to Rules 4004 and 7001(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and 11 U.S.C. § 727 (the "Bankruptcy Code"), files this Complaint to Deny Discharge of Amr Elrahimy. In support of this Complaint, the United States Trustee states as follows:

### Jurisdiction, Venue, and Standing

  1.  This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157(a) and 1334. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

  2.  Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

3.      The United States Trustee has standing to bring this action pursuant to Sections 307 and 727 of the Bankruptcy Code and Bankruptcy Rule 4004.

4.      Pursuant to Local Bankr. Rule 7012-1, the United States Trustee consents to entry of a final order or judgment by this Court.

**Parties**

5.      The Plaintiff is the Acting United States Trustee for Region Four.

6.      Amr Elrahimy (the "Debtor") is the debtor in the above-captioned chapter 7 bankruptcy case and is the Defendant in this adversary proceeding.

**Facts**

**I.      Bankruptcy Case and Related Business Entities**

7.      On February 20, 2023 ("Petition Date"), the Debtor commenced this case by filing a voluntary petition under chapter 7 of the Bankruptcy Code.

8.      The Debtor is the sole owner and President of Optimum Construction, Inc. ("Optimum Construction").

9.      Four days prior to the Debtor's Petition Date, on February 16, 2023 ("Optimum Construction Petition Date"), Optimum Construction filed a voluntary petition for bankruptcy protection under chapter 7.  *See In re Optimum Construction, Inc.*, Case No. 23-11027-LSS.

10.      Steven Greenfeld has been appointed to serve as the Chapter 7 Trustee in both cases.

11.      In addition, the Debtor owns or has an ownership interest in various other businesses:  Optimum Group, Inc. ("Optimum Group"); Optimum Interiors, Inc. ("Optimum Interiors"); Optimum Investment, Inc. ("Optimum Investments"); Grip, Inc.; The Clarksburg Room, LLC; FKB, Inc.; and OLVHR, UAE.

II.     **Optimum Construction**

12.     Optimum Construction was a construction company that performed home improvement services under a Maryland Home Improvement Commission ("MHIC") license held by the Debtor.  *See* Motion for Rule 2004 Examination of the MHIC, Dkt. No. 66 at p. 3.

13.     According to Optimum Construction, it filed for bankruptcy relief "due to cash flow problems following the COVID-19 Pandemic, Optimum [Construction] was unable to complete services for which it had contracted and for which it had accepted money from a number of homeowners." *Id.*

14.     Optimum Construction does "not deny that it had accepted money on contracts for which it was ultimately unable to perform.  Rather Optimum [Construction] has asserted that it fully anticipated that it would perform on all of its contracts when it entered into those contracts and that it was only unable to perform because of circumstances that were completely beyond its control."  *See* Debtor's Reply to Consumer Protection Division's and Richard Rist's Opposition to Motions for Rule 2004 Examinations ("Debtor's Reply"), Dkt. No. 94 at p. 2.

15.     Yet, the books and records of Optimum Construction tell a different story.  Between 2020 and the Optimum Construction Petition Date, the business was profitable, and any losses resulted from the Debtor impermissibly converting Optimum Construction's funds and dissipating its assets for the Debtor's benefit.

### A. Optimum Construction Breaks Even in 2020 at the Height of the Pandemic

16.    Prior to Optimum Construction's bankruptcy filing, it maintained the following bank accounts:

| Optimum Construction Bank Accounts | | |
|---|---|---|
| **Institution** | **Type** | **Account** |
| Citibank | Business Checking | xxxx3674 |
| Citibank | Business Checking | xxxx8342 |
| Wells Fargo | Business Checking | xxxx8405 |

17.    On April 16, 2020, Optimum Construction received $65,000 from the Small Business Association ("SBA") under the Paycheck Protection Program ("PPP"). These funds were deposited into Optimum Construction Citibank account xxxx3674 ("Optimum Construction Citibank 3674") as follows:

| | | | | |
|---|---|---|---|---|
| 04/15 | TRANSFER DEBIT<br>TRANSFER TO CHECKING      Apr 15<br>VIA CBUSOL      REFERENCE # 035128 | 10,000.00 | | 60,589.74 |
| 04/16 | MISC DEPOSIT<br>RF # 0072585 | | 65,000.00 | 125,589.74 |
| 04/16 | DEBIT CARD PURCH Card Ending in 4751<br>K1F45PTR      4751 Apr 16<br>PAYPAL *HENGTAIBOYU E 4029357733   CA 20106 | 38.29 | | 125,551.45 |

18.    In addition, Optimum Construction recorded the deposit on its register for Citibank account ending in 3674[1] ("Optimum Construction Register 3674") as follows:

Optimum Construction, Inc.                                                          4/12/2023 10:16 PM

Register: Citi Bank 3674
From 03/17/2017 through 04/12/2023
Sorted by: Date and Order Entered

| Date | Number | Payee | Account | Memo | Payment | C | Deposit | Balance |
|---|---|---|---|---|---|---|---|---|
| 04/17/2020 | | QuickBooks Payroll ... | -split- | Created by Pay... | 8,590.09 | X | | 18,361.03 |
| 04/17/2020 | ACH | Business Insurance S... | 63300 · Insurance Exp... | | 2,472.97 | X | | 15,888.06 |
| 04/17/2020 | 146 | | 23000 · PPP Loan Pay... | federal paychec... | | X | 65,000.00 | 80,888.06 |
| 04/20/2020 | DD1244 | Bobbie Smith | -split- | Direct Deposit | | X | | 80,888.06 |

---

[1] The Debtor provided a copy of the Optimum Construction Register 3674 to the United States Trustee on or about September 19, 2023. The check register is dated April 12, 2023, at 10:16 p.m.

19.     In addition, Optimum Construction received $150,000 from the SBA as an Economic Injury Disaster Loan ("EIDL") on or about May 19, 2020.  The funds in the amount of $149,900 less a small service fee were deposited into Optimum Construction Citibank 3674 as follows:

| 05/18 | DEBIT CARD (POS) Card Ending in 4751 HARRIS TE 22700 SWEETS CLARKSBURG  MDUS0515 | | 215.74 | 73,495.63 |
|---|---|---|---|---|
| 05/19 | ELECTRONIC CREDIT SBAD TREAS 310    MISC PAY 813303740573000 May 19 RMT*CT*8133037405 200 00689 F8027*********| | 149,900.00 | 223,395.63 |
| 05/19 | DEBIT CARD PURCH Card Ending in 4751 SF4WZ8ML                      4751 May 19 MCDONALD'S F15930    GERMANTOWN   MD 20137 | | 8.56 | 223,387.07 |

20.     In addition, Optimum Construction recorded the deposit on Optimum Construction Register 3674 as follows:

| 05/19/2020 | ACH | AmEx - 1006 | 20000 · Accounts Paya... | | 11,000.00 | X | | -19,543.53 |
|---|---|---|---|---|---|---|---|---|
| 05/19/2020 | 154 | | Loan Income | SBA Economic... | | X | 149,900.00 | 130,356.47 |
| 05/20/2020 | ACH | Home Depot | 50400 · Construction ... | | 137.39 | X | | 130,219.08 |

21.     According to Optimum Construction's 2020 Income Tax Return, a total of $1,886,049 of gross receipts were collected during the year resulting in a near breakeven ordinary business income of $909.  Overall, Optimum Construction reported a positive cash balance equal to $7,002 as of December 31, 2020.

22.     In addition, Optimum Construction received additional cash flow from the $65,000 PPP funds and $150,000 EIDL loan discussed *supra*.

**B.  Optimum Construction Operates Profitably in 2021 Despite the Impermissible Conversion of at least $225,000**

23.     Upon information and belief, Optimum Construction received additional PPP funds in 2021, yet none of these funds are reflected in Optimum Construction's books and records.

24.      Optimum Construction's 2021 tax return and its Citibank 2021-year-end loan statement indicate that Optimum Construction received additional PPP funds of $65,000.  The

United States Trustee has been unable to trace these funds into Optimum Construction's bank accounts and it is does not appear on Optimum Construction's registers.

25.    However, online sources indicate that Optimum Construction received $26,200 in PPP funds on or about January 25, 2021. These funds were deposited into Optimum Construction Citibank 3674, on February 1, 2021 as follows:

| **CHECKING ACTIVITY** | | | | |
| --- | --- | --- | --- | --- |

**CitiBusiness Streamlined Checking**

| 3674 | | **Beginning Balance:** | | $84.95- |
| --- | --- | --- | --- | --- |
| | | **Ending Balance:** | | $139.67 |
| **Date** | **Description** | **Debits** | **Credits** | **Balance** |
| 02/01 | TRANSFER CREDIT | | 100.00 | 15.05 |
| | TRANSFER FROM CHECKING        Feb 01 | | | |
| | 009109678342 VIA CBusOL Re # 011171 | | | |
| 02/01 | MISC DEPOSIT | | 26,200.00 | 26,215.05 |
| | RF # 0231000 | | | |
| 02/04 | OTHER WITHDRAWAL/ADJ | 26,000.00 | | 215.05 |
| 02/09 | SERVICE CHARGE | 75.38 | | 139.67 |
| | ACCT ANALYSIS DIRECT DB | | | |
| | **Total Debits/Credits** | **26,075.38** | **26,300.00** | |

26.    As reflected above, $26,000 was withdrawn on or about February 4, 2021. The United States Trustee has been unable to trace the withdrawal of these funds, but upon information and belief, it appears to be pursuant to a cashier's check.

27.    Optimum Construction did **not** record the $26,200 on Optimum Construction Register 3674 and it is not otherwise accounted for in its books and records.

28.    In August 2021, the SBA increased the EIDL to $500,000 and disbursed an additional $350,000 to Optimum Construction on August 17, 2021, into Optimum Construction Citibank 3674 as follows:

**CHECKING ACTIVITY**

**CitiBusiness Streamlined Checking**

| 3674 | | Beginning Balance: | | $44.91 |
| | | Ending Balance: | | $854.64 |

| Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 08/04 | DEBIT CARD PURCH Card Ending in 4751<br>BJMJX66S        004751 Aug 04<br>DRINKMORE DELIVERY, I 301-4179333   MD 21215 | 23.85 | | 21.06 |
| 08/10 | SERVICE CHARGE<br>ACCT ANALYSIS DIRECT DB | 75.00 | | 53.94- |
| 08/11 | TRANSFER CREDIT<br>TRANSFER FROM CHECKING         Aug 11<br>009100678342 VIA CBusOL Re # 013832 | | 1,000.00 | 946.06 |
| 08/17 | ELECTRONIC CREDIT<br>SBAD TREAS 310    MISC PAY 813303740573000 Aug 17<br>RMT*CT*8133937405 200 05277 F8088*********\ | | 350,000.00 | 350,946.06 |

29.     Optimum Construction did **not** record the $350,000 on Optimum Construction

Register 3674 and it is not otherwise accounted for in its books and records.

30.     On that same day, Optimum Construction impermissibly transferred the $350,000

to Citibank account xxxx7127 held in the name of Optimum Investment, as follows:

OPTIMUM CONSTRUCTION, INC          Account        3674      Page 2 of 2          001/R1/04F007
                                   Statement Period:  Aug 1 - Aug 31, 2021

**CHECKING ACTIVITY**                                                          **Continued**

| Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 08/17 | DEBIT CARD PURCH Card Ending in 4751<br>QH8BD000        004751 Aug 17<br>ANTHONY'S LIQUOR   OCEAN CITY   MD 21226 | 91.42 | | 350,854.64 |
| 08/17 | TRANSFER DEBIT<br>TRANSFER TO CHECKING         Aug 17<br>VIA CBUSOL        REFERENCE # 060231 | 350,000.00 | | 854.64 |
| | Total Debits/Credits | 350,190.27 | 351,000.00 | |

OPTIMUM INVESTMENT INC             Account        7127      Page 2 of 3          001/R1/20F007
                                   Statement Period:  Aug 1 - Aug 31, 2021

**CHECKING ACTIVITY**                                                          **Continued**

| Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 08/16 | DEBIT CARD (POS) Card Ending in 3396<br>7-ELEVEN        OCEAN CITY   MDUS0515 | 70.35 | | 2,301.49 |
| 08/17 | TRANSFER CREDIT<br>TRANSFER FROM CHECKING         Aug 17<br>009100843674 VIA CBusOL Re # 060231 | | 350,000.00 | 352,301.49 |
| 08/17 | DEBIT CARD PURCH Card Ending in 3396<br>NRHWGSD4        003396 Aug 17<br>DUMSERS DAIRYLAND   OCEAN CITY   MD 21226 | 3.15 | | 352,298.34 |

31.    On August 23, 2023, Optimum Investment then impermissibly transferred the $350,000 to Citibank account xxxx5788[2] held in the name of Optimum Group, as follows:

| Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 08/23 | DEBIT CARD PURCH Card Ending in 3396<br>TJTP8WHQ          003396 Aug 23<br>FLAGSHIP CARWASH CENT GERMANTOWN   MD 21232 | 12.00 | | 350,454.08 |
| 08/23 | TRANSFER DEBIT<br>TRANSFER TO CHECKING          Aug 23<br>VIA CBUSOL          REFERENCE # 003922 | 350,000.00 | | 454.08 |
| 08/25 | TRANSFER CREDIT<br>TRANSFER FROM CHECKING          Aug 25<br>009109685788 VIA CBusOL Re # 062092 | | 49,986.11 | 50,440.19 |

**CHECKING ACTIVITY**

CitiBusiness Streamlined Checking

| 5788 | | Beginning Balance:<br>Ending Balance: | | $0.00<br>$100,000.00 |
|---|---|---|---|---|
| **Date** | **Description** | **Debits** | **Credits** | **Balance** |
| 08/23 | TRANSFER CREDIT<br>TRANSFER FROM CHECKING          Aug 23<br>009109637127 VIA CBusOL Re # 003922 | | 350,000.00 | 350,000.00 |
| 08/23 | TRANSFER DEBIT<br>TRANSFER TO CHECKING          Aug 23<br>VIA CBUSOL          REFERENCE # 015007 | 150,000.00 | | 200,000.00 |
| 08/25 | TRANSFER DEBIT<br>TRANSFER TO CHECKING          Aug 25<br>VIA CBUSOL          REFERENCE # 062092 | 49,986.11 | | 150,013.89 |

32.    On that same day, Optimum Group transferred **only** $150,000 of the $350,000 to Citibank account xxxx8342 held in the name of Optimum Construction ("Optimum Construction Citibank 8342"), as follows:

**CHECKING ACTIVITY**

CitiBusiness Streamlined Checking

| 5788 | | Beginning Balance:<br>Ending Balance: | | $0.00<br>$100,000.00 |
|---|---|---|---|---|
| **Date** | **Description** | **Debits** | **Credits** | **Balance** |
| 08/23 | TRANSFER CREDIT<br>TRANSFER FROM CHECKING          Aug 23<br>009109637127 VIA CBusOL Re # 003922 | | 350,000.00 | 350,000.00 |
| 08/23 | TRANSFER DEBIT<br>TRANSFER TO CHECKING          Aug 23<br>VIA CBUSOL          REFERENCE # 015007 | 150,000.00 | | 200,000.00 |
| 08/25 | TRANSFER DEBIT<br>TRANSFER TO CHECKING          Aug 25<br>VIA CBUSOL          REFERENCE # 062092 | 49,986.11 | | 150,013.89 |

[2] Prior to the transfer of the $350,000 on August 23, 2023, the Optimum Group bank balance for Citibank account xxxx5788 was $0.

OPTIMUM CONSTRUCTION, INC        Account ███████ 8342      Page 5 of 8        001/R1/20F007
                                 Statement Period:  Aug 1 - Aug 31, 2021

| **CHECKING ACTIVITY** | | | **Continued** |
|---|---|---|---|
| **Date** | **Description** | **Debits** | **Credits** | **Balance** |

| Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 08/19 | DEBIT CARD (POS) Card Ending in 5489<br>BP#9320268HALPI        ROCKVILLE  MDUS0015 | 59.15 | | 58,205.36 |
| 08/20 | DEBIT CARD PURCH Card Ending in 5489<br>SG90Q66S          005489 Aug 20<br>DRIVEEZMD REBILL     BALTIMORE   MD 21231 | 125.00 | | 58,080.36 |
| 08/20 | ACH DEBIT<br>JOHN HANCOCK     ACH DEBIT 0145504     Aug 20 | 150.00 | | 57,930.36 |
| 08/23 | DEPOSIT | | 9,108.00 | 67,038.36 |
| 08/23 | TRANSFER CREDIT<br>TRANSFER FROM CHECKING              Aug 23<br>009100695799 VIA CBusOL Re # 015007 | | 150,000.00 | 217,038.36 |
| 08/23 | DEBIT CARD PURCH Card Ending in 5489<br>C9K0MVS5          005489 Aug 23<br>J2 *METROFAX      8889294141  CA 21232 | 9.95 | | 217,028.41 |

33.    Optimum Construction recorded the $150,000 deposit on its register for Citibank

account ending in 8342 ("Optimum Construction Register 8342"),[3] as follows:

| 08/23/2021 | DD1441 | Mohamed R Elrahimy | -split- | Direct Deposit | X | | -30,435.90 |
|---|---|---|---|---|---|---|---|
| 08/23/2021 | 266 | | 23100 · SBA Loan Pay... | SBA Loan ($3... | X | 150,000.00 | 119,564.10 |
| 08/24/2021 | | Elisabeth Vanderham | 11000 · Accounts Rece... | | X | 2,186.60 | 121,750.70 |

34.    Optimum Group impermissibly retained $200,000 of the SBA funds allocated to

Optimum Construction.

35.    The Debtor testified, under oath, on April 12, 2023, that none of the money received

from the EIDL was used to repay shareholder loans and instead was used to pay subcontractors

and payroll:

> [Mr. Greenfeld] Q:  Was any of that money used to repay your
> loans?
>
> [Debtor] A:  No, sir.
>
> [Ms. Stevens] Q:  How do you know that?
>
> [Debtor] A:  We used the money because we have – so, our, our
> operation is, was pretty large.  We had about almost $100,000 of,
> of payroll every month.  So, when we got that loan, we paid a lot
> of our subcontractors and payroll.

*See* Amr Elrahimy, Meeting of Creditors Transcript, April 12, 2023, pp. 22:19-23-1.

---

[3] The Debtor provided a copy of the Optimum Construction Register 8342 to the United States Trustee on or about
September 19, 2023.  The check register is dated April 12, 2023, at 10:17 p.m.

36.    The Debtor's testimony is inconsistent with the bank statements for Optimum Construction and Optimum Group. From August 2021 to February 2022, the Debtor, through the use of Optimum Group's Citibank account xxxx5788, spent the $200,000 for his own personal use. On February 1, 2022, the Optimum Group Citibank account xxxx5788 had a balance of $888.16.

37.    The books and records of Optimum Construction, at a minimum, fail to account for the additional $26,200 in PPP funds received in January 2021, and the $200,000 in EIDL funds received in August 2021.

38.    Despite the impermissible conversion of the $226,200 in funds, Optimum Construction had a profitable year in 2021.

39.    According to Optimum Construction's 2021 Income Tax Return, a total of $2,463,503 of gross receipts were collected during 2021, resulting in a reported ordinary business income equal to $198,684. In addition, Optimum Construction received additional cash flow from the $26,200 PPP funds and $350,000 EIDL loan discussed *supra*. It is unclear why the $392,912 variance in profits from operations and cash flow from loan proceeds are not reflected in the December 31, 2021 ending cash balance of $31,455 as represented on the income tax return.

### C. Optimum Construction's 2022 Performance

40.    To date, Optimum Construction has not prepared or filed its 2022 Income Tax Return.[4]

41.    According to Optimum Construction's Amended SOFA, the gross revenue for 2022 was $2,835,960.39.

---

[4] *See* Stipulation and Consent Order Regarding 2022 Tax Returns, Case No. 23-11097, Dkt. No. 141.

42.     Yet, according to Optimum Construction's Profit & Loss Statement for 2022,[5] a total of $3,292,765.15 of gross receipts were collected during 2022 with an overall net loss of $79,361.48.

### III.    Judgments Against Optimum Construction

43.     Starting at the end of 2020, Optimum Construction was named in various lawsuits brought by homeowners for alleged breach of contract and failure to perform.

44.     More specifically, Theresa Bohn filed a complaint against Optimum Construction in the Circuit Court for Montgomery County, Maryland on or about October 20, 2021, Case No. 487730-V.  Ms. Bohn obtained a judgment against Optimum Construction in the amount of $108,282 on or about March 28, 2022.  On or about May 6, 2022, a Writ of Garnishment was issued to Citibank and in August 2022, Ms. Bohn filed requests for writs against 10 other banks. On or about September 19, 2022, the parties entered into a Settlement and Forbearance Agreement that provided for a regular payment plan in exchange for Ms. Bohn refraining from actions to enforce her judgment.  Upon information and belief, Optimum Construction defaulted under the agreement and Ms. Bohn began her collection efforts in earnest in November, 2022.

45.     Similarly, Bessem Agbor filed a complaint against Optimum Construction in the Circuit Court for Montgomery County, Maryland on or about May 4, 2022, Case No. C-15-CV-22-1807.  Ms. Agbor named the Debtor in his individual capacity as part of her lawsuit.  On June 23, 2022, Ms. Agbor obtained a judgment against Optimum Construction on a motion for summary judgment in the amount of $148,000.  The case with respect to the Debtor's liability was pending on the Petition Date.

---

[5] The Debtor provided a copy of the Optimum Construction Profit & Loss Statement for 2022 to the United States Trustee on or about September 19, 2023.  The 2022 Profit & Loss Statement is dated April 12, 2023, at 10:15 p.m.

46.     In addition to the civil lawsuits, the Debtor admits that "Optimum [Construction's] inability to perform on these contracts resulted in the filing of a number of Applications for Statement of Charges" that "led to the commencement of sixteen criminal cases against the Debtor." Further, "Optimum [Construction], and the Debtor acknowledge that there were breaches of the contracts, but deny any criminal intent or criminal responsibility." Debtor's Reply, Dkt. No. 94 at pp. 2-3.

47.     "[A]nticipating that homeowners might assert breach of contract claims against him notwithstanding that he personally had not entered into any contract with homeowners, on February 20, 2023, the Debtor commenced [his] case by filing his own Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code." *Id.* at p. 3.

## IV.    Transfer of Optimum Construction's Assets to the Debtor via Optimum Interiors

48.     During the meeting of creditors held on March 28, 2023, the Debtor testified, under oath, in his capacity as the owner and sole member of Optimum Construction.

49.     The Debtor explained that the Optimum Construction bank accounts were garnished sometime in November or December of 2022.

50.     The Debtor initially testified that Optimum Construction and Optimum Interiors were two separate entities, but, when questioned further about the relationship, he invoked his Fifth Amendment privilege against self-incrimination.

51.     On March 28, 2023, the Debtor testified, under oath, as follows regarding the relationship between Optimum Construction and Optimum Interiors:

> [Mr. Greenfeld] Q: …[D]id Optimum Interiors have any business other than being the showroom for Optimum Construction?
>
> [Debtor] A:  No, sir.
>
> Q:  So, it had no revenue, correct?
>
> A: Correct.

Q: …Did it make any payments to any, any friends, or you, or any friends or family members in the year before you filed for bankruptcy?

A: No, sir.

Q: What did it do with the money that it received?

A: …I'm afraid I cannot answer that question for the same reason as before.

*See* Optimum Construction, Meeting of Creditors Transcript, March 28, 2023, pp. 14:24-15:12.

52.    The Debtor further testified on March 28, 2023 as follows:

[Mr. Gambrill] Q:  Did you ship any assets from Optimum Construction to another entity in the last 12 months?

[Debtor] A:  I'm not able to answer that question for the same reasons, sir.

Q:  You're invoking your Fifth Amendment?

A:  Yes, sir.

Q:  Did you, you mentioned, it was referenced that Optimum Interiors, but did you advise any customers who contracted with Optimum Construction to issue payment to any other entity or to any person?

A:  For the same reason, sir, I am, I am invoking my Fifth Amendment.  I cannot answer that question.

Q:  Sir, did you move any money to offshore accounts in 2021 or 2022?

A:  I cannot answer that question either, sir, for the same reason.

Q:  Did you move any moneys from the company to any other person outside the United States in 2021 or 2022, or 2023?

A:  I cannot answer that question for the same reason, sir.

*See* Optimum Construction, Meeting of Creditors Transcript, March 28, 2023, pp. 37:9-38:4.

53.    The Debtor was more candid about the relationship between Optimum Construction and Optimum Interiors during the continued meeting of creditors held on April 12, 2023.

54.    On April 12, 2023, the Debtor testified, under oath, that, to avoid the Optimum Construction garnishments, he directed Optimum Construction's customer deposits and payments be deposited into Optimum Interiors' bank accounts, as follows:

[Mr. Greenfeld] Q:  But what, what revenue did Optimum Interiors have?

[Debtor] A:  Optimum Interiors didn't have its own revenue; it was all the clients of Optimum Construction when the Optimum Construction bank accounts were frozen, we continued using Optimum Interiors' bank account instead.  So, there has been a few transactions with the existing Optimum Construction clients that continued to, to work under Optimum Interiors instead of Optimum Construction.

Q:  And Optimum Construction was actually the party doing the work?

A:  That is correct.

Q:  Okay.  And, and the sole reason for depositing checks into Optimum Interiors was because the Optimum Construction account had been attached?

A:  That is correct.

*See* Amr Elrahimy, Meeting of Creditors Transcript, April 12, 2023, pp. 10:24-11:14.

55.    However, in response to questioning regarding the status of Optimum Construction's customer deposits or payments, the Debtor refused to answer those questions, again invoking his Fifth Amendment privilege against self-incrimination.

56.    A review of the bank records for Optimum Construction shows that, between November 1, 2022 and the Optimum Construction Petition Date, there was de minimus activity in the three Optimum Construction bank accounts.

57.    Instead, during this same time period, approximately $500,000 was deposited into the Optimum Interiors Citibank account ending in xxxx7084 and subsequently withdrawn.  Upon information and belief, the $500,000 is comprised of deposits and payments made by Optimum Construction's customers.  The moneys deposited into the Optimum Interiors account were assets of Optimum Construction.

58.    On February 27, 2023, Optimum Construction filed Amended Schedule A/B that identifies Citibank account xxxx7084 in the name of Optimum Interiors as a financial account

owned or controlled by Optimum Construction.  *See* Optimum Construction, Amended Schedule A/B, Dkt. No. 15 at Question 3.

59.     Yet, within the one year prior to the Petition Date, $95,067.06 was transferred from the Optimum Interiors Citibank account xxxx7084 to the Debtor via the Optimum Group Citibank account xxxx5788.

60.     In addition, $12,000 from the Optimum Interiors Citibank account xxxx7084 paid personal expenses of the Debtor, as follows: (1) November 16, 2022, $6,000 wire to Ana Vukelic in UAE for an unrelated business venture of the Debtor, and (2) November 28, 2022, $6,000 transfer to the Debtor's personal Citibank account xxxx4890.

**V.     Transfers of Optimum Construction's Assets to the Debtor via Optimum Group**

61.     The Debtor is also the sole shareholder of Optimum Group.  The Debtor testified on March 28, 2023, that there was no direct relationship between Optimum Group and Optimum Construction.  Instead, Optimum Group "is just a consultant, consultant to the company that was established to be the umbrella of, of my future companies, that's all."  *See* Optimum Construction, Meeting of Creditors Transcript, March 28, 2023, pp. 32:23-33:3.

62.     The Debtor further explained that "It's not in operation" and that "it's just me basically."  *See* Amr Elrahimy, Meeting of Creditors Transcript, April 12, 2023, p. 13-1-9.

63.     The Debtor testified on April 12, 2023, that "[A]t a certain point, every time Optimum Construction was to pay me back for some of the money that I paid, it was going to be a check under my name; and to a certain point, that changed to a check to Optimum Group instead of my name" and that "I was operating out of the business account instead of a personal account, so, I, basically, I was, I'm the only one for Optimum Group."  *See* Amr Elrahimy, Meeting of Creditors Transcript, April 12, 2023, pp. 17:22-18:7.

64.     Upon information and belief, the Debtor maintained Citibank account xxxx5788 in the name of Optimum Group for his personal banking to avoid any attempted garnishments of his personal bank accounts.

65.     As discussed above, the first activity in the Optimum Group Citibank account xxxx5788 was in August 2021 when $350,000 of Optimum Construction's EIDL funds were impermissibly transferred to Optimum Group.  Thereafter, only $150,000 of the funds were transferred back to Optimum Construction.

66.     A review of Optimum Group's Citibank account xxxx5788 from August 2021 to February 2022 shows that the $200,000 funds were dissipated by the Debtor for his personal expenses, including payments to his other business entities and trips to Dubai, Egypt, New York, and Texas.

67.     One year prior to the Petition Date, Optimum Group's Citibank account xxx5788 had a balance of $4,279.33.  Yet, during the one year preceding his bankruptcy filing and the bankruptcy filing of Optimum Construction, the Debtor caused $164,823.40 of Optimum Construction funds to be deposited into this account for his own personal use.

## VI.    Transfers of Optimum Construction's Assets to the Debtor as Disguised Consultant Fees or Loan Repayments

68.     Upon information and belief, the Debtor asserts that Optimum Construction funds that were deposited either directly from Optimum Construction or indirectly via Optimum Interiors into Optimum Group's Citibank account xxxx5788 were consultant fees earned by the Debtor.

69.     Yet, a review of Optimum Construction's books and records indicate that, prior to 2022, Optimum Construction did not pay the Debtor for consulting services.

70.     According to Optimum Construction's 2020 tax return, Optimum Construction paid the Debtor total cash compensation equal to $49,767 during 2020.  The cash compensation paid to

the Debtor consisted of $17,200 of officer's compensation salary and $32,567 of shareholder loan repayments.

71.    In addition, according to Optimum Construction's 2021 tax return, Optimum Construction paid the Debtor total cash compensation equal to $74,610 during 2021.  The cash compensation consisted of $15,000 of officer's compensation salary, $10,000 of shareholder distributions, and $49,610 of shareholder loan repayments.

72.    To date, neither the Debtor nor Optimum Construction have prepared and filed their 2022 Income Tax Returns.[6]  Without the 2022 Income Tax Returns, it is unclear what the Debtor's total cash compensation was in 2022.  To date, neither the Debtor nor Optimum Construction have provided a copy of the Debtor's W-2 or K-1.

73.    Yet, a review of the bank statements for Optimum Construction and Optimum Interiors indicates that, in the one year prior to the Petition Date, $259,890.46 of Optimum Construction's funds were transferred to Optimum Group Citibank account xxxx5788.  As stated, the Optimum Group Citibank account was used by the Debtor for his personal banking to avoid any attempted garnishments of his personal accounts.

74.    In fact, the Debtor testified on April 12, 2023, when questioned about his business income of $23,494 disclosed on his SOFA for 2022, that "I do not believe it was from Optimum Construction because I was not making any money from Optimum Construction.  I was getting repaid back from loans I put in there."  *See* Amr Elrahimy, Meeting of Creditors Transcript, April 12, 2023, pp. 17:11-14.

75.    To the extent the Debtor attempts to characterize the $259,890.46 payments received from Optimum Construction in 2022 as loan repayments, such position is inconsistent

---

[6] *See* Stipulation and Consent Order Regarding 2022 Tax Returns, Case No. 23-11097, Dkt. No. 141.

with the Debtor's SOFA that states that he received $105,000 in loan repayments in 2022.  Further, the Debtor's SOFA is inconsistent with Optimum Construction's Owner Loan Transactions from QuickBooks[7] and Optimum Construction's Amended SOFA that provides that the Debtor received $47,500 in loan repayments in 2022.

76.    Based on the Owner Loan Transactions, the Debtor has loaned Optimum Construction $931,416.04 from 2017 through 2022.  Yet, the Debtor has taken out $1,117,186.84 in "loan repayments."  In other words, the Debtor owes Optimum Construction $185,770.80.

## VII.    Other Transfers

77.    The Debtor testified under oath on March 28, 2023, that, besides rent and utilities for Optimum Interiors, Optimum Construction did not pay expenses for any of his other related businesses.  The Debtor testified as follows:

> [Mr. Greenfeld] Q:  Did [Optimum Construction] pay for any other expenses of any other entity?
>
> [Debor] A:  Not that I recall, sir.
>
> Q:  Did it pay any expenses of Grip?
>
> A:  No, sir.
>
> Q: Did it pay any employees of Grip?
>
> A: No, sir.

*See* Optimum Construction Meeting of Creditors Transcript, March 28, 2023, pp. 18:19-25.

78.    Yet, Optimum Construction's bank accounts show the following payments: (1) six transactions in the total amount of $11,316 for the benefit of Grip, Inc.[8] and (2) a $20,000 wire on August 15, 2022, to Ana Vukelic in UAE for an unrelated business venture of the Debtor.

---

[7] The Debtor provided a copy of the Owner Loan Transactions from QuickBooks to the United States Trustee on or about September 19, 2023.  The Owner Loan Transaction is dated April 13, 2023 at 9:50 a.m.

[8] Upon information and belief, there may be other transfers of Optimum Construction's assets by way of paying Grip employees.

79.     In addition, the Debtor testified on March 28, 2023, that no family members were employees of Optimum Construction.  Yet, a review of Optimum Construction's W-2s for 2022 shows that the Debtor's father, Mohammed Rauf Elrahimy, received $50,000 in compensation. Upon information and belief, Mohammed Rauf Elrahimy did not provide services to Optimum Construction.

80.     On the Debtor's Amended Schedules E/F, he lists his father as a creditor in the amount of $150,000.  On April 12, 2023, he testified as follows with respect to the moneys owed to his father:

> [Ms. Stevens] Q:  Mr. Elrahimy, on your creditor's list, there's a Mohammed Rauf Elrahimy.  Who is this?
>
> [Debtor] A:  That is my father.
>
> Q:  You owed a hundred –and why is he owed $150,000?
>
> A:  I have borrowed that amount from him.
>
> Q:  Have you paid him back any of this amount?
>
> A:  I have not.
>
> Q: And when did you borrow it from him?
>
> A: This was an accumulation of over time.

See Amr Elrahimy, Meeting of Creditors Transcript, April 12, 2023, pp. 38:18-39:3.

81.     In addition, the Debtor lists his brother, Sameh Elrahimy, as a creditor in the amount of $60,000.

82.     On April 12, 2023, the Debtor testified that he had not made any repayments to his brother as follows:

> [Ms. Stevens] Q:  Who is Sameh, S-A-M-E-H, Elrahimy?
>
> [Debtor] A:  That is, that is my brother.
>
> Q:  And why is he owed $60,000?
>
> A: Very similar scenario.
>
> Q:  And when is the last time you paid him?
>
> A:  I have not paid him anything yet.

*See* Amr Elrahimy, Meeting of Creditors Transcript, April 12, 2023, p. 39:14-19.

83.     On the Debtor's SOFA, he does not disclose any payments or transfers of property to insiders within one year before the Petition Date or other types of transfers to his father or brother.  Further, the Debtor does not disclose any gifts with a value of more than $600 per person within two years prior to the Petition Date. *See* SOFA, Questions 7, 8, 13, and 18.

84.     Yet, the following payments were made by the Debtor via the Optimum Group Citibank account xxxx5788 to the Debtor's father and brother:

| Date | Check No. | Name | Amount |
|---|---|---|---|
| 2/15/2022 | 1001 | Mohamed Raouf Elrahimy | $15,000 |
| 2/15/2022 | 1002 | Sameh Elrahimy | $10,000 |
| 4/28/2022 | 1003 | Mohamed Raouf Elrahimy | $10,000 |
| 7/22/2022 | 1005 | Mohamed Raouf Elrahimy | $30,000 |
| 8/9/2022 | 1007 | Mohamed Raouf Elrahimy | $3,500 |
| **TOTAL** | | | **$68,500** |

## VIII.  Summary of Optimum Construction's Assets Impermissibly Transferred

85.     As explained above, upon information and belief, within the one year prior to the Petition Date, the Debtor impermissibly transferred the following assets of Optimum Construction:

| Transfer | Amount |
|---|---|
| Various Transfers of Optimum Construction Funds to Optimum Interiors and then to Debtor via Optimum Group | $95,067.06 |
| Wire from Optimum Interiors to Ana Vukelic on November 16, 2022 | $6,000 |
| Transfer from Optimum Interiors to Debtor's personal account xxxx4890 on November 28, 2022 | $6,000 |
| Various Transfers from Optimum Construction to the Debtor via Optimum Group | $164,823.40 |
| Six Transfers for the benefit of Grip | $11,316 |
| Wire from Optimum Construction to Ana Vukelic on August 15, 2022 | $20,000 |
| Various Transfers to Mohammed Rauf Elrahimy in the form of W-2 wages | $50,000 |
| **TOTAL** | **$353,206.46** |

**Denial of Discharge**

86.     Section 727(c)(1) of the Bankruptcy Code states that "the United States Trustee may object to the granting of a discharge under subsection (a) of this section."

87.     The Section 341 meeting of creditors in the chapter 7 proceeding was originally scheduled for March 28, 2023, and continued to April 12, 2023.

88.     Pursuant to Bankruptcy Rule 4004(a), the time to file a complaint objecting to a debtor's discharge expires sixty days after the first date scheduled for the Section 341 meeting of creditors unless extended by order of the Court.

89.     The initial deadline for objecting to the Debtor's discharge was May 30, 2023.

90.     On May 16, 2023, the Chapter 7 Trustee filed a Motion for Extension of Time to Object to Discharge.  The Court entered an order granting the motion and extended the deadline to object to the Debtor's discharge to September 28, 2023.

91.     The discharge deadline was further extended by consent among the Debtor, United States Trustee, and Chapter 7 Trustee.  Dkt. Nos. 82 and 125.  The Court entered the order granting the most recent consent motion, thereby extending the deadline to object to the Debtor's discharge to January 26, 2024.

92.     This Complaint is timely filed pursuant to Section 727 of the Bankruptcy Code.

### COUNT I
### Denial of Discharge: 11 U.S.C. §§ 727(a)(2); 727(a)(7)
### Transfer and Concealment of Assets with Intent to Hinder, Delay or Defraud Creditors
### (Transfers of Optimum Construction Assets to Optimum Interiors)

93.     The United States Trustee incorporates by reference into this Count, all the preceding paragraphs of this Complaint.

94.     Section 727(a)(2) of the Bankruptcy Code provides that a debtor is not entitled to a discharge if he or she, "with the intent to hinder, delay, or defraud a creditor or an officer of the

estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition." 11 U.S.C. § 727(a)(2).

95.     Section 727(a)(7) of the Bankruptcy Code provides that a debtor is not entitled to a discharge if he or she "has committed any act specified in paragraph (2) . . . of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider." 11 U.S.C. § 727(a)(7).

96.     Within one year prior to filing the petition, the Debtor fraudulently transferred and concealed assets of Optimum Construction in excess of $500,000 with the intent to hinder, delay and defraud Optimum Construction's creditors.

97.     Most of the transfers occurred after Ms. Bohn obtained a judgment against Optimum Construction in the amount of $108,282 on or about March 28, 2022 and the Debtor and Optimum Construction were facing other lawsuits.

98.     In fact, the Debtor testified under oath that, once Optimum Construction's bank accounts were frozen as a result of the garnishments, Optimum Construction's customer payments and deposits were redirected to Optimum Interiors' bank account.

99.     In the one year prior to the Petition Date, $532,277.59 of Optimum Construction's funds were transferred impermissibly to Optimum Interiors' bank accounts.

100.    The moneys deposited into the Optimum Interiors account were assets of Optimum Construction.

101.    The Debtor transferred Optimum Construction's assets to Optimum Interiors to conceal such assets with the intent to hinder, delay, or defraud Optimum Construction's creditors.

102.    Because the Debtor fraudulently transferred assets of Optimum Construction to Optimum Interiors within one year prior to the Petition Date, he is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and (a)(7).

103.    To the extent that the Debtor transferred Optimum Construction's assets to Optimum Interiors after the date of the filing of the petition, he is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(2)(B) and (a)(7).

**COUNT II**
**Denial of Discharge: 11 U.S.C. §§ 727(a)(2); 727(a)(7)**
**Transfer and Concealment of Assets with Intent to Hinder, Delay or Defraud Creditors**
**(Transfers of Optimum Construction Assets to Optimum Group)**

104.    The United States Trustee incorporates by reference into this Count, all the preceding paragraphs of this Complaint.

105.    Section 727(a)(2) of the Bankruptcy Code provides that a debtor is not entitled to a discharge if he or she, "with the intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition." 11 U.S.C. § 727(a)(2).

106.    Section 727(a)(7) of the Bankruptcy Code provides that a debtor is not entitled to a discharge if he or she "has committed any act specified in paragraph (2) . . . of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider." 11 U.S.C. § 727(a)(7).

107.    Within one year prior to filing the petition, the Debtor fraudulently transferred and concealed assets of Optimum Construction in excess of $350,000 with the intent to hinder, delay and defraud Optimum Construction's creditors.

108.    Most of the transfers occurred after Ms. Bohn obtained a judgment against Optimum Construction in the amount of $108,282 on or about March 28, 2022 and the Debtor and Optimum Construction were facing other lawsuits.

109.    Upon information and belief, the Debtor maintained Citibank account xxx5788 in the name of Optimum Group for his personal banking to avoid any attempted garnishments of his personal bank accounts.

110.    As discussed above, the first activity in the Optimum Group Citibank account xxx5788 was in August 2021 when $350,000 of Optimum Construction's EIDL funds were impermissibly transferred to Optimum Group.   Thereafter, only $150,000 of the funds were transferred back to Optimum Construction.

111.    A review of Optimum Group's Citibank account xxx5788 from August 2021 to February 2022 shows that the $200,000 funds were dissipated by the Debtor for his personal expenses, including payments to his other business entities and trips to Dubai, Egypt, New York, and Texas.

112.    One year prior to the Petition Date, Optimum Group's Citibank account xxx5788 had a balance of $4,279.33.   Yet, during the one year preceding his bankruptcy filing and the bankruptcy filing of Optimum Construction, the Debtor caused $164,823.40 of Optimum Construction funds to be deposited into this account for his own personal use.

113.    The moneys deposited into the Optimum Group's account were assets of Optimum Construction.

114.     The Debtor transferred Optimum Construction's assets to Optimum Group to conceal such assets with the intent to hinder, delay, or defraud Optimum Construction's creditors.

115.     Because the Debtor fraudulently transferred assets of Optimum Construction to Optimum Group within one year prior to the Petition Date, he is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and (a)(7).

116.     To the extent that the Debtor transferred Optimum Construction's assets to Optimum Group after the date of the filing of the petition, he is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(2)(B) and (a)(7).

### COUNT III
### Denial of Discharge: 11 U.S.C. § 727(a)(2)
### Transfer and Concealment of Assets with Intent to Hinder, Delay or Defraud Creditors
### (Debtor Transfers via Optimum Group)

117.     The United States Trustee incorporates by reference into this Count, all the preceding paragraphs of this Complaint.

118.     Section 727(a)(2) of the Bankruptcy Code provides that a debtor is not entitled to a discharge if he or she, "with the intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition."  11 U.S.C. § 727(a)(2).

119.     Within one year prior to filing the petition, the Debtor fraudulently transferred and concealed his assets in excess of $400,000 with the intent to hinder, delay, and defraud his personal creditors.

120.    Most of the transfers occurred after Ms. Bohn obtained a judgment against Optimum Construction in the amount of $108,282 on or about March 28, 2022 and the Debtor and Optimum Construction were facing other lawsuits.

121.    Upon information and belief, the Debtor maintained Citibank account xxx5788 in the name of Optimum Group for his personal banking to avoid any attempted garnishments of his personal bank accounts.

122.    As discussed above, the first activity in the Optimum Group Citibank account xxx5788 was in August 2021 when $350,000 of Optimum Construction's EIDL funds were impermissibly transferred to Optimum Group.  Thereafter, only $150,000 of the funds were transferred back to Optimum Construction.

123.    A review of Optimum Group's Citibank account xxx5788 from August 2021 to February 2022 shows that the $200,000 funds were dissipated by the Debtor for his personal expenses, including payments to his other business entities and trips to Dubai, Egypt, New York, and Texas.

124.    One year prior to the Petition Date, $415,482 of money was deposited into Optimum Group's Citibank account xxx5788.

125.    The United States Trustee asserts that most of the money deposited into the Optimum Group's bank account constituted impermissible transfers of Optimum Construction's assets as discussed *supra*.  However, to the extent that the Debtor was legally entitled to a portion of this money, the Debtor purposefully concealed and redirected his assets to Optimum Group in an effort to hinder, delay, and defraud his personal creditors.

126.    The moneys deposited into the Optimum Group's account were assets of the Debtor.

127.    The Debtor transferred his assets to Optimum Group with the intent to hinder, delay, or defraud his personal creditors.

128.    Because the Debtor fraudulently transferred his assets to Optimum Group within one year prior to the Petition Date, he is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(2)(A).

129.    To the extent that the Debtor transferred his assets to Optimum Group after the date of the filing of the petition, he is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(2)(B).

**COUNT IV**
**Denial of Discharge: 11 U.S.C. §§ 727(a)(7); 727(a)(2)**
**Transfer of Assets with Intent to Hinder, Delay or Defraud Creditors**
**(Miscellaneous Transfers of Optimum Construction Assets)**

130.    The United States Trustee incorporates by reference into this Count, all the preceding paragraphs of this Complaint.

131.    Section 727(a)(2) of the Bankruptcy Code provides that a debtor is not entitled to a discharge if he or she, "with the intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition." 11 U.S.C. § 727(a)(2).

132.    Section 727(a)(7) of the Bankruptcy Code provides that a debtor is not entitled to a discharge if he or she "has committed any act specified in paragraph (2) . . . of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider." 11 U.S.C. § 727(a)(7).

133.     Within one year prior to filing the petition, the Debtor fraudulently transferred and concealed assets of Optimum Construction in excess of $350,000 with the intent to hinder, delay and defraud Optimum Construction's creditors.

134.     Most of the transfers occurred after Ms. Bohn obtained a judgment against Optimum Construction in the amount of $108,282 on or about March 28, 2022 and the Debtor and Optimum Construction were facing other lawsuits.

135.     As discussed *supra*, the Debtor impermissibly transferred assets of Optimum Construction to Optimum Interiors.  Optimum Interiors made the following fraudulent transfers of Optimum Construction's assets: (1) November 16, 2022, $6,000 wire to Ana Vukelic in UAW for an unrelated business venture of the Debtor, and (2) November 28, 2022, $6,000 transfer to the Debtor's personal Citibank account xxx4890.

136.     The Debtor caused Optimum Construction to make the following fraudulent transfers: (1) six transactions in the total amount of $11,316 for the benefit of Grip, and (2) a $20,000 wire on August 16, 2022, to Ana Vukelic in UAW for an unrelated business venture of the Debtor.

137.     The Debtor caused Optimum Construction to fraudulently pay his father, Mohammed Rauf Elrahimy, $50,000 in W-2 compensation for no services rendered to Optimum Construction.

138.     The Debtor caused Optimum Construction funds to be transferred to Optimum Group to fraudulently pay his father and brother a total of $68,500.

139.     The Debtor fraudulently transferred Optimum Construction's assets with the intent to hinder, delay, or defraud Optimum Construction's creditors.

140.    Because the Debtor fraudulently transferred assets of Optimum Construction within one year prior to the Petition Date, he is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and (a)(7).

141.    To the extent that the Debtor transferred Optimum Construction's assets after the date of the filing of the petition, he is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(2)(B) and (7).

**COUNT V**
**Denial of Discharge: 11 U.S.C. § 727(a)(2)**
**Transfer of Assets with Intent to Hinder, Delay or Defraud Creditors**
**(Transfers to Insiders)**

142.    The United States Trustee incorporates by reference into this Count, all the preceding paragraphs of this Complaint.

143.    Section 727(a)(2) of the Bankruptcy Code provides that a debtor is not entitled to a discharge if he or she, "with the intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition." 11 U.S.C. § 727(a)(2).

144.    Within one year prior to filing the petition, the Debtor fraudulently transferred $68,500 to his father and brother with the intent to hinder, delay, and defraud his personal creditors.

145.    Upon information and belief, the Debtor maintained Citibank account xxx5788 in the name of Optimum Group for his personal banking to avoid any attempted garnishments of his personal bank accounts.

146.    The United States Trustee asserts that most of the money deposited into the Optimum Group's bank account constituted impermissible transfers of Optimum Construction's

assets as discussed *supra*.  However, to the extent that the Debtor was legally entitled to a portion of this money, the Debtor purposefully concealed and redirected his assets to Optimum Group in an effort to hinder, delay, and defraud his personal creditors.

147.    Within the one year prior to the Petition Date, the following payments were made by the Debtor via the Optimum Group Citibank account xxx5788 to his father and brother:

| Date | Check No. | Name | Amount |
|------|-----------|------|--------|
| 2/15/2022 | 1001 | Mohamed Raouf Elrahimy | $15,000 |
| 2/15/2022 | 1002 | Sameh Elrahimy | $10,000 |
| 4/28/2022 | 1003 | Mohamed Raouf Elrahimy | $10,000 |
| 7/22/2022 | 1005 | Mohamed Raouf Elrahimy | $30,000 |
| 8/9/2022 | 1007 | Mohamed Raouf Elrahimy | $3,500 |
| **TOTAL** | | | **$68,500** |

148.    The Debtor transferred his assets to his father and brother with the intent to hinder, delay, or defraud his personal creditors.

149.    Because the Debtor fraudulently transferred his assets to his father and brother within one year prior to the Petition Date, he is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(2)(A).

150.    To the extent that the Debtor transferred his assets to his father and brother after the date of the filing of the petition, he is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(2)(B).

**COUNT VI**
**Denial of Discharge: 11 U.S.C. §§ 727(a)(5); 727(a)(7)**
**<u>Failure to Explain Loss of Assets to Meet Defendant's Liabilities</u>**
**(Dissipation of Optimum Construction's Assets)**

151.    The United States Trustee incorporates by reference into this Count, all the preceding paragraphs of this Complaint.

152.    Section 727(a)(5) of the Bankruptcy Code states that "The court shall grant the debtor a discharge, unless—the debtor has failed to explain satisfactorily, before determination of

denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

153.    Section 727(a)(7) of the Bankruptcy Code provides that a debtor is not entitled to a discharge if he or she "has committed any act specified in paragraph (5) . . . of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider."  11 U.S.C. § 727(a)(7).

154.    The Debtor has failed to explain satisfactorily, before determination of denial of discharge, any loss of assets or deficiency of assets to meet Optimum Construction's liabilities.

155.    Optimum Construction was profitable during the three years prior to filing for bankruptcy.

156.    According to Optimum Construction's 2020 Income Tax Return, a total of $1,886,049 of gross receipts were collected during the 2020 year, resulting in a near breakeven ordinary business income of $909.  Overall, Optimum Construction reported a positive cash balance equal to $7,002 as of December 31, 2020.

157.    In addition, Optimum Construction received additional cash flow from the $65,000 PPP funds and $150,000 EIDL loan in 2020.

158.    Likewise, according to Optimum Construction's 2021 Income Tax Return, a total of $2,463,503 of gross receipts were collected during 2021 resulting in a reported ordinary business income equal to $198,684.  In addition, Optimum Construction received additional cash flow from the $26,200 PPP funds and the $350,000 EIDL loan in 2021.

159.    It is unclear why the $392,912 variance in profits from operation and cash flow from loan proceeds are not reflected in the December 31, 2021 ending cash balance of $31,455 as represented on the 2021 income tax return.

160.     In other words, as of December 31, 2021, Optimum Construction cannot account for $392,912 in funds pursuant to $424,367 of annual excess net cash flow during 2021.

161.     To date, the Debtor and Optimum Construction have failed to prepare and file their 2022 tax returns.  The United States Trustee has reason to believe, based on the financial records received for 2022, that Optimum Construction reported a moderate net loss of only $79,361 on total revenues equal to $3,292,765.

162.     To the extent that Optimum Construction, in fact, had a net loss of $79,361 in 2022 it would seem that, from a cash basis, such loss would have been offset by the $392,912 funds that were unaccounted for at the end of 2021.  Again, it would appear that Optimum Construction operated profitably and, yet, it cannot account for the dissipation of its assets to meet its liabilities.

163.     Because the Debtor has failed to explain satisfactorily the loss of assets or deficiency of assets to meet Optimum Construction's liabilities, he is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(5) and (a)(7).

### COUNT VII
#### Denial of Discharge: 11 U.S.C. §§ 727(a)(4); 727(a)(7)
#### False Oath or Account in Connection with the Case

164.     The United States Trustee incorporates by reference into this Count, all the preceding paragraphs of this Complaint.

165.     Section 727(a)(4) of the Bankruptcy Code provides that a debtor is not entitled to a discharge if he or she "knowingly and fraudulently, in connection with the case . . . made a false oath or account."

166.     Section 727(a)(7) of the Bankruptcy Code provides that a debtor is not entitled to a discharge if he or she "has committed any act specified in paragraph (4) . . . of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection

with another case, under this title or under the Bankruptcy Act, concerning an insider." 11 U.S.C. § 727(a)(7).

167.    The Debtor knowingly and fraudulently, in connection with his bankruptcy case and the Optimum Construction bankruptcy case, made false oaths or accounts.

168.    The Debtor committed the following false oaths on his SOFA:

    a.    Income from employment or operating a business;

    b.    Other income;

    c.    Payments on a debt you owed to an insider within 1 year;

    d.    Payment or transfer of any property on a debt that benefited an insider within 1 year;

    e.    Gifts with a value of more than $600 per person within two years prior to the Petition Date;

    f.    Transfers within two years to anyone other than transfers in the ordinary course; and

    g.    Hold or control property that someone else owns.

169.    The Debtor committed the following false oaths on Optimum Construction's Amended SOFA:

    a.    Gross revenue from operating a business; and

    b.    Payments or transfers of property made within 1 year that benefited an insider.

170.    The Debtor committed the following false oaths during the March 28, 2023 and/or April 12, 2023 meeting of creditors:

    a.    That the EIDL loan was used to pay Optimum Construction payroll;

    b.    That Optimum Interiors did not make any payments to friends or family members of the Debtor;

    c.    That Optimum Construction did not pay expenses for any of the Debtor's related businesses;

d. That no family members of the Debtor were employees of Optimum Construction; and

e. That no moneys were paid to the Debtor's father or brother within the one year prior to filing for bankruptcy.

171. Subject to further discovery, the United States Trustee has reason to believe that additional false oaths and/or material omissions may have occurred in this bankruptcy case.

172. The Debtor's false oaths were made willfully with the intent to defraud.

173. Because the Debtor has committed false oaths in connection with his bankruptcy case and the Optimum Construction bankruptcy case, he is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(4) and (a)(7).

**COUNT VIII**
**Denial of Discharge: 11 U.S.C. §§ 727(a)(3); 727(a)(7)**
**<u>Concealed and Falsified Business Records</u>**

174. The United States Trustee incorporates by reference into this Count, all the preceding paragraphs of this Complaint.

175. Section 727(a)(3) of the Bankruptcy Code provides that a debtor is not entitled to a discharge if he or she " has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."

176. Section 727(a)(7) of the Bankruptcy Code provides that a debtor is not entitled to a discharge if he or she "has committed any act specified in paragraph (3) . . . of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider." 11 U.S.C. § 727(a)(7).

177.    The books and records of Optimum Construction, as provided by the Debtor, conceal and/or falsify the true financial condition of Optimum Construction.

178.    On or about September 19, 2023, the Debtor provided copies of the Optimum Construction Register 3674 to the United States Trustee.  The Optimum Register 3674 is dated April 12, 2023, at 10:16 p.m.  The Optimum Construction Register 3674 purportedly accounts for all Optimum Construction business transactions occurring from March 17, 2017 to May 3, 2022 that flowed through Citibank account 3674.

179.    On or about September 19, 2023, the Debtor provided copies of the Optimum Construction Register 8342 to the United States Trustee.  The Optimum Register 8342 is dated April 12, 2023, at 10:17 p.m.  The Optimum Construction Register 8342 purportedly accounts for all Optimum Construction business transactions occurring from December 2, 2020 to July 25, 2022 that flowed through Citibank account 8342.

180.    The Optimum Construction Register 3674 fails to account for the $26,200 in PPP funds deposited into the Optimum Construction Citibank account 3674 on or about February 4, 2021.

181.    Upon information and belief, the $26,200 in PPP funds received by Optimum Construction on or about February 4, 2021 is not accounted for in any of Optimum Construction's books and records.

182.    The Optimum Construction Register 3674 fails to account for the $350,000 in EIDL funds deposited into the Optimum Construction Citibank account 3674 on or about August 17, 2021.

183.    The Optimum Construction Register 3674 fails to account for the transfer of the $350,000 EIDL funds to the Optimum Investment Citibank account 7127 on August 17, 2021.

184.    The Optimum Construction Register 8342 accounts for a $150,000 deposit on August 23, 2021.

185.    Upon information and belief, $200,000 of the $350,000 EIDL funds received by Optimum Construction on or about August 17, 2021 are not accounted for in any of Optimum Construction's books and records.

186.     But for the United States Trustee reviewing the bank statements for Citibank accounts xxx3674 and xxx8342 and painstakingly tracing these funds, the records provided by the Debtor and Optimum Construction to the United States Trustee were falsified and these sums totaling $226,000 were concealed.

187.    Because the Debtor has concealed and falsified Optimum Construction's business records from which Optimum Construction's financial condition or business transactions might be ascertained, he is not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(3) and (7).

## PRAYER FOR RELIEF

WHEREFORE, the United States Trustee respectfully requests that the Court enter judgment in his favor and deny the discharge of Debtor, Amr Elrahimy, and for such other relief as is just and appropriate.

Respectfully submitted,

Date: January 25, 2024

**GERARD R. VETTER**
Acting United States Trustee for Region 4

By Counsel:

*/s/ Lisa Yonka Stevens*
Lisa Yonka Stevens, Bar No. 27728
Trial Attorney
Office of the United States Trustee
6305 Ivy Lane, Suite 600
Greenbelt, MD  20770
(301) 344-6216
Fax: (301) 344-8431
E-mail: Lisa.Y.Stevens@usdoj.gov